# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Joseph Hauser, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CELESTIAL SEASONINGS, INC.,<br><br>Defendant. | Case No. 1:26-cv-116-CB<br>The Hon. Cathy Bissoon<br><br>**JURY TRIAL DEMANDED** |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**NATURE OF THE ACTION** ........ **1**

**PARTIES** ........ **3**

**JURISDICTION AND VENUE** ........ **5**

**FACTS** ........ **6**

A. DEFENDANT DECEIVES CONSUMERS BY MISREPRESENTING THAT THE PRODUCTS ARE NOT ARTIFICIALLY FLAVORED. ........ 6

B. THE PRODUCTS ARE MISBRANDED. ........ 15

C. REASONABLE CONSUMERS RELIED ON DEFENDANT'S MISREPRESENTATIONS TO THEIR DETRIMENT. ........ 18

D. DEFENDANT'S WRONGFUL CONDUCT CAUSED PLAINTIFF'S AND THE CLASS MEMBERS' INJURIES. ........ 18

**CLASS DEFINITIONS AND ALLEGATIONS** ........ **21**

**CAUSES OF ACTION** ........ **23**

COUNT I: VIOLATION OF PENNSYLVANIA UTPCPL ........ 23

COUNT II: UNJUST ENRICHMENT ........ 27

**RELIEF DEMANDED** ........ **29**

**JURY DEMAND** ........ **29**

Plaintiff Joseph Hauser brings this action on behalf of himself and all others similarly situated ("Class Members") against Defendant Celestial Seasonings, Inc. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This case arises from Defendant's deceptive and misleading practices with respect to its marketing and sale of its Fruit Tea Sampler Herbal Tea (the "Products" or "Product").




2. Defendant manufactures, distributes, markets, labels and sells the Product.

3. Defendant deceptively represents that the Product's characterizing flavors originate solely by natural flavors.

4. Defendant deceptively represents through acts and omissions that the Product's characterizing flavors are not simulated or reinforced by artificial flavors.

5. The Product states that the fruit flavors present in each of the teas is "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS."

6. The Product does not indicate that any of the characterizing flavors in the Product are artificial flavoring agents.

7. Plaintiff relied upon these representations and omissions when he purchased the Product.

8. The deception lies in the fact that the Product is not solely flavored by natural ingredients because the peach and blackberry flavored teas are flavored in part by the artificial flavoring ingredient Citric Acid.




9. Defendant's use of Citric Acid as a flavoring ingredient that simulates, resembles, and reinforces the flavor of peaches and blackberries while also representing to consumers that the Product is "naturally flavored" is not only unlawful under Pennsylvania and federal law, but also, it is deceptive to reasonable consumers.

10. Plaintiff and Class Members relied on these representations and omissions and were injured both in the price paid for the Product as well as the premium paid for the Product over a similar product not bearing this deceptive representation.

11. Reasonable consumers would not have purchased the Products if they had known about the misrepresentations and omissions, or would have purchased them on different terms.

12. Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent a Class of Pennsylvania consumers. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its deceptive business practices, as detailed herein.

## PARTIES

13. Plaintiff is an adult citizen of Pennsylvania residing in Erie County.

a. In the preceding year, Plaintiff has purchased Defendant's Product from a variety of retailers located in Erie County, and purchased the Product from retailers located outside of Erie County that shipped the Product to his home in Erie County.

b. Prior to his purchase, Plaintiff saw and relied on Defendant's labeling representing that the Product's characterizing flavors were provided solely by natural flavors and did not rely upon artificial flavoring agents.

c. Plaintiff wished to purchase the Product for personal consumption. When Plaintiff saw Defendant's misrepresentations prior to and at the time of purchase, he relied on Defendant's prominent representations and claims about the Products. Specifically, that the Product's peach and blackberry characterizing flavors were provided solely by natural ingredients and not provided by any artificial flavoring agents.

d. Plaintiff relied on the Defendant's representations, including but not limited to, that the Product was a "Fruit Tea Sampler" as well as the images of peaches and blackberries and the repeated "peach" and "berry" words on the front label, the "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS," and the omission that the Products are artificially flavored.

e. Plaintiff understood these representations to mean the Product's flavoring was provided solely by natural ingredients and did not rely upon artificial flavoring agents. Had Plaintiff known the truth, he would not have purchased the Products at a premium price.

f. Plaintiff brings the claims below seeking damages, actual and statutory, as well as restitution.

14. Defendant CELESTIAL SEASONINGS, INC. is a corporation organized under the laws of Delaware with its principal place of business located in Boulder, Colorado.

a. Defendant produces, markets, distributes, and sells its consumer food products in retail stores throughout the Commonwealth of Pennsylvania.

b. At all relevant times, Defendant was engaged in manufacturing, marketing, distributing, and advertising its Product throughout Pennsylvania.

15. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who have knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

16. Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## JURISDICTION AND VENUE

17. This Court has personal jurisdiction over the Defendant because the Defendant intentionally avails itself of the markets within Pennsylvania through the promotion, sale, marketing and distribution of its Products in Pennsylvania, which renders the exercise of jurisdiction by this Court proper and necessary.

18. This Court has subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class

Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $45,000,000, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $45,000,000. in the aggregate, exclusive of interest and costs. In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

19. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## FACTS

### A. Defendant deceives consumers by misrepresenting that the Products are not artificially flavored.

20. Consumers increasingly and consciously seek out healthier foods and snacks— placing value on products that do not rely upon artificial flavoring. Consumers seek these types of products for various reasons, including perceived benefits of attaining health and wellness for themselves and their families.

21. Consumers across all demographics have a strong preference for products that rely upon natural flavors rather than artificial flavors.




22. As a result, consumers are willing to pay, and have paid, a premium for products that do not rely on artificial flavors.

23. Companies such as the Defendant capitalize on the consumer's demand for authentic flavoring and generate increased unit sales, revenue, and profit by misrepresenting the sole use of flavor from natural ingredients while hiding the Product's reliance on artificial flavoring.

24. Further, consumers rely on label representations and information in making purchasing decisions.

25. Knowing this, Defendant prominently feature fruit representations displayed in words and images throughout its packaging.

26. Notably, the Product's principal display panel displays images of peaches, blackberries, raspberries, blueberries, and cherries. Additionally, the words "Raspberry," "Peach," "Berry," "Blueberry, and "Cherry" are prominently featured directly below the images of each fruit.




27. The Product additionally includes "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" in all capital letters above the images of the fruits.

28. There is no indication that the Product is artificially flavored.

29. This leads consumers to believe that the Product's peach and blackberry flavor is not sourced in any part from artificial flavoring.

30. This leads consumers to believe that the Product's peach and blackberry flavor is sourced only from natural ingredients.

31. Reasonable consumers – accustomed to companies complying with FDA regulations and declaring the use of artificial flavoring – accept this representation to mean that the flavor does not rely upon artificial flavors.

32. In contrast to these representations, the peach and blackberry flavors are artificially flavored in part by Citric Acid.




33. Natural Citric Acid in peaches is one of the most important factors that provides the flavor of peaches.[1]

34. Natural Citric Acid in blackberries is one of the most important factors that provides the flavor of blackberries.[2]

35. Unfortunately, the Citric Acid in the Product is synthetic.

a. Naturally occurring citric acid exists in many fruits and vegetables including peaches and blackberries.

---

[1] *See* Jiang, X., *Comparative network analysis reveals the dynamics of organic acid diversity during fruit ripening in peach (Prunus persica L. Batsch)*, BMC PLANT BIOL 23 (2023) at 16 ("[T]he proportions of malic acid and citric acid are also the important factors that affect the peach flavor.).

[2] *See* Fan-Chiang HJ, Wrolstad RE. *Sugar and nonvolatile acid composition of blackberries*. J AOAC INT. 2010 May-Jun;93(3):956-65. PMID: 20629401; Karaklajic-Stajic, Zaklina, *Black Queens of Fruits: Chemical Composition of Blackberry (Rubus subg. rubus Watson) and Black Currant (Ribes nigrum L.) Cultivars Selected in Serbia*, FOODS 12 (2023) at 7 ("[C]itric acid was the dominant organic acid.").

b. Synthetically-produced citric acid, known as manufactured citric acid ("MCA"), as opposed to the naturally occurring kind that exists in fruits and vegetables, is utilized extensively in food manufacturing.

c. MCA is subject to significant chemical processing.[3]

d. The vast majority of MCA (estimated 99%) is synthesized using mutant strain of a black mold *Aspergillus niger*.[4]

e. The "Solvent extraction process for citric acid" requires the "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor" which allows the production of "food-grade citric acid in accordance with" specified conditions, including that "[t]he solvent used in the process consists of a mixture of n- octyl alcohol meeting the requirements of §172.864 of this chapter, synthetic isoparaffinic petroleum hydrocarbons meeting the requirements of §172.882 of this chapter, and tridocecyl amine." 12 C.F.R. §173.280.

f. The solvent extraction process for citric acid uses chemical solvents (noctyl alcohol and synthetic isoparaffinic petroleum hydrocarbons) to extract the citric acid from the *Aspergillus niger* fermentation liquor and residue of the chemical solvents remains in "finished" MCA.

---

[3] Hesham, Abd El-Latif, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, MYCOBIOLOGY (Feb. 21 2020), vol. 48,2 122-132.

[4] Sweis, I. E., & Cressey, B. C., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, TOXICOLOGY REPORTS (2018), 5, 808–812.

g. MCA is an unnatural substance.

h. The FDA has stated that citric acid is an artificial and synthetic additive in multiple warning letters to the food industry. *See, e.g.*, Warning Letter to Oak Tree Farm Dairy, Food & Drug Admin. (Aug. 16, 2001) (use of the phrase "Nothing Artificial" on a label was misleading to consumers "because [the food] contains citric acid"); Warning Letter to Hirzel Canning Co., Food & Drug Admin. (Aug. 29, 2001) ("[T]he addition of … citric acid to these products preclude the use of the term 'natural' to describe the product."); Warning Letter to Fresh Express Inc., Food & Drug Admin. (Aug. 6, 2010) (citric acid on nutrition label without description of function is misbranding.).[5]

i. Over 99 percent of the world's output of citric acid is produced through artificial means.[6]

36. Defendant voluntarily uses MCA as an ingredient in the Product.

a. All of the citric acid that Defendant adds as an ingredient in the Product is synthetically produced.

b. Defendant does not add natural citric acid as an ingredient in the Product.

[5] FDA Warning Letters sent on August 16, 2001, August 29, 2001, and October 6, 2010 letters, *available at* https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/.

[6] Behera, B. C., *Citric acid from Aspergillus niger: a comprehensive overview*, CRITICAL REVIEWS IN MICROBIOLOGY (2020), 46(6), 727–749.

c. Unfortunately, reasonable consumers are unaware, because of Defendant's misrepresentations and omissions, that the citric acid in the Product is synthetically-made, and not natural.

d. Instead, reasonable consumers believe and rely upon what they are explicitly told by product makers on product labels, and in this case, consumers were unambiguously told by Defendant, and therefore reasonably believed, that the Product is "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS."

e. Further, reasonable consumers are familiar with the food and beverage products that announce they are "artificially flavored" when appropriate expect that the absence of this language indicates that none of the characterizing flavors of a product are simulated or reinforced by artificial flavoring agents.

37. Defendant adds MCA in order to simulate, reinforce, and resemble the Product's characterizing flavors.

a. Defendant knowingly and purposefully adds MCA as an ingredient in the Product in order to simulate, reinforce, and resemble the characterizing flavors of the peach and "wild berry" teas included in the Product.

b. The Product therefore contains artificial flavor that simulates, reinforces, and resembles the characterizing flavors of peaches and blackberries in each of the respective teas.

c. Defendant does not add MCA to the Product for the purpose of using MCA as a preservative. That is evident from the fact that Defendant does not add citric acid as an ingredient in every flavor of the tea contained in the Product.

d. Rather, the reason Defendant adds MCA as an ingredient in the Product is for the MCA to simulate or reinforce the characterizing flavors of the peach and “wild berry” teas.

38. Defendant surrounds the Product with fruit representations throughout the packaging in combination with the representation that the characterizing flavors are provided solely by natural ingredients and the omission of disclosure language that the Product is artificially flavored.

39. For example, on multiple locations throughout the Product’s packaging, Defendant includes images of peaches and blackberries and numerous references to these fruits.

40. Based on the representations that appear in the marketing and on the packaging of the Products, Plaintiff reasonably believed that the Products were solely flavored by natural ingredients and not artificially flavored.

41. Taken as a whole, the words and images used on Defendant’s packaging leads consumers to believe that the Product’s characterizing flavors are solely provided by natural ingredients and not artificial flavoring agents.

42. Rather, Defendant’s Products are artificially flavored.

43. Not only are consumers misled but also competing products sharing the same shelves as Defendant's Products are placed at a competitive disadvantage.

44. For example, these competing products are sold in the same stores as Defendant's Products yet—unlike the Products—these items accurately represent that they are not artificially flavored:




45. Additionally, other competing products that share the same shelves as the Products accurately represent that they are artificially flavored:




46. Defendant's deceptions harm not only consumers but also companies that accurately represent its products by diverting attention and dollars away from competitors that are good faith market participants.

**B. The Products are misbranded.**

47. Because the Products' characterizing flavors are simulated or reinforced by artificial flavoring agents, federal and state laws require the Products to display disclosures to inform consumers that they are artificially flavored.

48. The Products' labeling shows none of the required disclosures alerting consumers that the Products are artificially flavored.

49. Because the peach and blackberry flavors are simulated or reinforced by artificial ingredients, the "Naturally Flavored" representation is false and deceptive.

50. The Products therefore not only violate federal and state regulations but also violated consumer protection laws like the UTPCPL.

51. The U.S. Food, Drug, and Cosmetic Act regulations require that a food's label accurately describe the food product, its characterizing flavors, and all ingredients. *See*, 21 C.F.R. 102.5(a).

52. Pennsylvania's Food Safety Act has adopted the entirety of the FDCA.

53. Under federal and state law, any recognizable primary flavor identified on the front label of a food Product is referred to as a "characterizing flavor."

54. Federal regulations hold that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, *e.g.*, depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor". *See* 21 C.F.R. 101.22(i).

55. The peaches and blackberries displayed on the Product's front-label and numerous "peach" and "blackberry" references are primary recognizable flavors and are therefore considered characterizing flavors.

56. If a product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product contains either natural or artificial flavorings or both.

57. If any artificial flavor "simulates, resembles or reinforces" the characterizing flavor in the product, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i) (3), (4).

58. Under FDCA section 403, a food is "misbranded" if "its labeling is false or misleading in any particular." *See* 21 U.S.C. §§ 343(a).

59. The composition of the flavoring of the Products has a material bearing on price and consumer acceptance. Moreover, Defendant's marketing and labeling of the Product—including imagery and references of peaches and berries with the representation that the product is flavored solely by natural ingredients and the omission of language identifying that it is artificially flavored—creates the erroneous impression that the Products are not artificially flavored.

60. The Products are artificially flavored.

61. Because Defendant fails to reveal the basic nature and characterizing properties of the Products (specifically, the source of the flavoring), Defendant's Products are not only sold with misleading labeling but also misbranded under Sections 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as it is currently labeled. *See* 21 U.S.C. § 331.

62. Moreover, Pennsylvania law forbids the misbranding of food in language identical to that found in the FDCA.

63. The Products are misbranded under Pennsylvania's Food Safety Act.

64. The Food Safety Act states: "All regulations and supplements thereto or revisions thereof adopted under the Federal acts which relate to food on, before or after the effective date of this subchapter are adopted as regulations in this Commonwealth." 3 Pa. Stat. and Cons. Stat. Ann. § 5733. Also, the Food Safety Act mandates that all regulations thereunder, must "be construed in a manner that is consistent with the Federal acts and regulations promulgated under those acts." 3

Pa. Stat. and Cons. Stat. Ann. § 5736. Specifically, "food standards and labeling requirements" must be consistent with Federal regulations. *Id.*

65. By misrepresenting the basic nature and characterizing properties of the Products, Defendant violates these federal and state regulations and misleads Plaintiff and other reasonable consumers

**C. Reasonable consumers relied on Defendant's misrepresentations to their detriment.**

66. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

67. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

68. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

**D. Defendant's wrongful conduct caused Plaintiff's and the Class Members' injuries.**

69. Defendant knows that consumers are willing to pay more for food and beverage products that are represented as being flavored solely by natural ingredients.

70. Defendant knows that consumers are willing to pay more for food and beverage products that are not represented as being artificially flavored.

71. As a result of these unfair and deceptive practices, Defendant has likely collected millions of dollars from the sale of the Products that they would not have otherwise earned. Plaintiff and Class Members paid money for food items that are not what they purported to be or what they bargained for. They paid a premium for the Products when they could have instead bought other, less expensive products that do not purport to be flavored solely by natural ingredients or include the mandatory disclosure language which notifies consumers that the product is artificially flavored.

72. In making the false and misleading representations described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, a product labeled and advertised as being flavored solely by natural ingredients.

73. As an immediate, direct, and proximate result of Defendant's false and misleading representations, Defendant injured the Plaintiff and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

e. Could not be used for the purpose for which they were purchased; and

f. Were of a different quality than what Defendant promised.

74. Had Defendant not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

75. Plaintiff and the Class Members paid for Products that were purported to not be artificially flavored. The products Plaintiff and the Class Members received were worth less than the products for which they paid.

76. Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

77. Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## CLASS DEFINITIONS AND ALLEGATIONS

78. Plaintiff, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), brings this action on behalf of the following class (the "Class" and "Class Members"):

> All persons in the Commonwealth of Pennsylvania who purchased the Products within Pennsylvania or purchased the Products from retailers that shipped the Products into Pennsylvania from April 14, 2020 through present.

79. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Class, the judge to whom the case is assigned and any immediate family members thereof.

80. The members of the Class are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

81. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative class that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a. whether Defendant misrepresented material facts concerning the Products;

b. whether Defendant misrepresented material facts concerning the Products in the marketing of every Product;

c. whether Defendant's conduct was unfair and/or deceptive;

d. whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the Class; and

e. whether Plaintiff and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

82. Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the Class, purchased Defendant's Products in reliance of Defendant's misrepresentations and omissions. Plaintiff sustained damages from Defendant's wrongful conduct.

83. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class.

84. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized

litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

85. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate equitable relief with respect to the Class as a whole.

86. The prosecution of separate actions by members of the class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the class even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

## COUNT I

## Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-1 *et seq*.

87. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88. Plaintiff brings this Count individually and on behalf of the members of the Class.

89. Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 et seq. (the "UTPCPL") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ."

90. The UTPCPL specifically defines what constitutes unfair methods of competition and unfair or deceptive acts or practices. Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of the UTPCPL, including the following:

(a) representing that its goods and services have characteristics, uses, benefits, and qualities they do not have (73 Pa. Cons. Stat. § 201-2(4)(v));

(b) representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Cons. Stat. § 201-2(v)(vii));

(c) advertising its goods and services with intent not to sell them as advertised (73 Pa. Cons. Stat. § 201-2(4)(ix)); and

(d) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 Pa. Cons. Stat. § 201-2(v)(xxi)).

91. Defendant is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

92. Plaintiff and the Class Members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

93. As alleged more fully above, Defendant has violated the Unfair Trade Practices and Consumer Protection Law by misleadingly, deceptively, and falsely representing to Plaintiff and the other members of the Class that the Products are not artificially flavored when in fact they are artificially flavored.

94. Defendant additionally violates the Unfair Trade Practices and Consumer Protection Law by artfully omitting the required disclosure statements informing consumers that the Products are artificially flavored.

95. Defendant's omissions and misrepresentations included lying about the quality of its Products because they are artificially flavored. Defendant additionally engaged in deceptive conduct which created the likelihood that Plaintiff would misunderstand the nature of the Products when Defendant represented that its Products were not artificially flavored. Defendant's Products do not conform as they are warranted and represented.

96. Defendant knew or should have known that when the Products left its control, that they were not in conformity or consistent with representations on the labels. Accordingly, Defendant's Products did not provide the represented and warranted benefits.

97. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

98. Defendant intended that Plaintiff and other Class Members rely on its omissions and misrepresentations, and this reliance was crucial to Defendant commanding a premium price for the Products.

99. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the Class have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

100. Plaintiff and other members of the Class lost money or property as a result of Defendant's violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were artificially flavored; (b) they paid a price premium compared to other consumer products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

101. Defendant deceived and continues to deceive consumers about the quality and ingredients of the Products. This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL. This illegal conduct by Defendant is continuing, with no indication that it will cease.

102. Accordingly, Defendant's deceptive, false and misleading statements deceived Plaintiff and Class Members and a substantial segment of the target consumer audience and improperly influenced consumers' purchasing decisions, as

Plaintiff and Class Members relied on such misrepresentations in violation of the UTPCPL.

103. Plaintiff and the Class seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

**COUNT II**

**Unjust Enrichment**

104. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

105. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against the Defendant.

106. Plaintiff and members of the Class conferred a benefit on the Defendant by purchasing the Products.

107. At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Class.

108. Plaintiff and Class Members conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing.

109. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and Class Members, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and Class members were not receiving a

product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

110. At the time of Plaintiff and Class Members' purchases, Defendant knew of the synthetic ingredients used in its Products. Knowing that their representations were false, Defendant sold the Products to Plaintiff and Class Members at a premium price. Accordingly, Defendant continues to retain a benefit improperly obtained to the detriment of Plaintiff and Class Members.

111. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

112. Plaintiff cannot use the Product for its intended purpose because it fails to conform to the characteristics, features, and functions described on the packaging.

113. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Class described herein; and (ii) appointing Plaintiff to serve as representatives for the Class and Plaintiff's counsel to serve as Class Counsel;

b) For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

c) For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d) For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

e) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

f) For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: July 20, 2026

Respectfully submitted,

**The Keeton Firm LLC**

/s/ Steffan T. Keeton
Steffan T. Keeton
Pa. Id. No. 314635
stkeeton@keetonfirm.com
100 S Commons, Ste. 102
Pittsburgh, PA 15212
Telephone: 1-888-412-5291

**THE MILLS LAW FIRM**
Michael A. Mills*
52D Briar Hollow Lane
Houston, TX 77027
Telephone: (713) 882-4915
mickey@millsmediation.com
**pro hac vice* forthcoming

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July, 2026, a true and correct copy of this First Amended Complaint was filed with the Court via the Electronic Case Filing System, and was served on all counsel of record through the same means.

/s/ *Steffan T. Keeton*
Steffan T. Keeton